UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA

vs.  No. 3:19-CR-220

GEORGE LASHAWN BASSETT

**DEFENDANT'S SENTENCING MEMORANDUM AND
REQUEST FOR DOWNWARD VARIANCE/DEPARTURE**

COMES the Defendant, George Lashawn Bassett, by and through counsel, and respectfully submits this Sentencing Memorandum including his Motion for Downward Variance/Departure, as follows:

### I. Introduction

The Defendant is a 28-year-old with a charismatic personality and great work ethic. He was born in Knoxville, Tennessee, and has spent his life here. He graduated from Fulton High school and has completed coursework at Pellissippi State. He is very close to his mother and his sisters, and he has a good work history. He does, however, have a history of substance use and abuse, starting at the age of 13. These habits have led the Defendant to the false friendships and associations that ultimately landed him before this Court on drug conspiracy charges.

Pursuant to a plea agreement, the Defendant pleaded on November 5, 2021, to the one count of a 15-count superseding indictment of conspiracy to distribute 50 grams or more of methamphetamine. The Defendant has been in custody since February 6, 2020. The circumstances of the offense are recounted in the plea agreement, and they show that the Defendant had a relatively minor role in the distribution of methamphetamine, and he admitted to participation in

three undercover buys. The Government has agreed to dismiss the remaining counts after sentencing.

## II. Sentencing Guidelines Range of Incarceration

The Presentence Investigation Report accurately reflects this Court's starting point for considering the Defendant's sentence. The guidelines provide that conspiracy to distribute methamphetamine in the amount stipulated by the parties has a base offense level of 34. See USSG § 2D1.1. The Defendant should receive a total three-point reduction for acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b). The Defendant agrees that the Presentence Investigation Report's Total Offense Level of 31 is technically correct; however, as argued below he believes a variance is necessary to conform with the sentencing principles set out in 18 U.S.C. § 3553.

The Defendant's prior criminal convictions result in a total criminal history category of IV. Based upon his criminal history category and total offense level, the applicable guideline imprisonment range is 151 months to 188 months incarceration. The Defendant requests a variance and/or departure based upon several grounds. As advocated below, the Defendant avers that the methamphetamine mixture guideline should instead be used and thus his imprisonment range for the drug charge should be 120 months of incarceration, which is the statutory mandatory minimum.

## III. Request for Downward Variance/Departure

The Defendant moves this Honorable Court for a variance and/or departure in the instant case. Specifically, the Defendant requests that this Honorable Court order the mandatory minimum sentence of 120 months.

## *Characteristics of the Defendant and Family Circumstances*

The Defendant avers that this Honorable Court should grant a variance based on his character. Mr. Bassett's mother, Jean Brown-Jones, describes her son as kind, loving, and compassionate. She explains that he is a family man who goes out of his way to make his mother, grandmother, and sisters happy. Ashley Young, Mr. Bassett's aunt, explains that his current arrest and incarceration has "forever changed him." She tells the Court how Mr. Bassett plans to move to Clarksville after his incarceration so that he can start anew and be a productive citizen. Mr. Bassett's grandmother, Charlotte Brown, described him as "generous to a fault." Her grandson has dreams of owning his own business and volunteering in his community.

Andrea Wilkerson Westfield has known the Defendant since high school, and she explains that he made some poor choices with who he befriended that led to his mistakes. She says, nevertheless, he is a caring person with a "heart of gold." She notes that the Defendant has a great support system when he gets out of jail. The Defendant's friend Markiya Hanshaw explains that the defendant is "silly, fun to be around, but most importantly the protector." She says her family has talked to him on a consistent basis since his incarceration, and that he has seen his wrongs and could one day be a great advocate for the community.

These letters show a consistent story: The Defendant is a kind, family-oriented, and hard-working person. Unfortunately, he chose to associate with people in this drug conspiracy. Prior to resuming drug trade activity with Bryan Cornelius, he was on a much better path. He was working two jobs and refocusing his life. After his incarceration, Mr. Bassett will be with his family and away from his former influences in Knoxville.

### *The Defendant's Criminal History is Overstated*

The Defendant has a total of four prior convictions, one of which was a judicial diversion. As a result of his criminal history points, the Defendant barely meets the threshold for a category IV offender. Indeed, the judicial diversion from September 22, 2011, for simple possession is the conviction that puts him into Category IV. Although USSG § 4A1.2(f) provides that a judicial deferral shall count toward criminal history points, it is important to note that, in the State of Tennessee, a judicial deferral pursuant to Tenn. Code Ann. § 40-35-313 provides that, upon expiration of the deferral period, "the court shall discharge the person and dismiss the proceedings against the person." Tenn. Code Ann. § 40-35-313(a)(2). Further, Tennessee law provides that "[t]he discharge and dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime or for any other purpose." *Id.* The Defendant should receive the benefit of his deferral. According to the PSR, the only violation filed on the deferral was dismissed, and thus his dismissal remained intact. As a result, the Defendant should receive a downward departure due to his criminal history overrepresenting the severity of his criminal history category. *See* USSG § 4A1.3(b). Alternatively, this Court should take this information into account when considering the Defendant's request for variance.

### *Policy Disagreement on "Actual" Methamphetamine*

The Defendant urges this Court to consider the increasing number of district courts throughout the United States that have found a policy disagreement with the methamphetamine guideline. *See United States v. Moreno*, No. 5:19CR002, 2019 WL 3557889, at *3 (W.D. Va. Aug. 5, 2019) (noting an "emerging chorus of district courts around the country" finding problems with the promulgation of the methamphetamine guidelines).

### A. The Sentencing Commission Deviated from the Empirical Approach when Setting Guideline Range for Methamphetamine

When the Sentencing Commission adopted the current sentencing guideline ranges for methamphetamine, it abandoned its reliance on empirical evidence and instead merely tracked the guidelines to congressional mandatory minimums. The Commission generally develops Guidelines using "an empirical approach based on data about past sentencing practices." *See Kimbrough v. United States*, 552 U.S. 85, 96 (2007); *see also United States v. Johnson*, 379 F.Supp.3d 1213, 1217 (N.D. Ala. 2019). However, in developing the weight-driven scheme formulated for drug offense under USSG § 2D1.1(c), the Commission "did not use this empirical approach," and as a result this guideline does "not exemplify the Commission's exercise of its characteristic institutional role" to "base its determinations on empirical data and national experience." *Id.* at 96, 109. As a result, the United States Supreme Court has noted that such deviation from the Commission's traditional role in created USSG § 2D1.1(c) affords district courts with greater leeway to vary from the guideline. *Id.* at 109-10.

In *United States v. Hayes*, Judge Bennett of the Northern District of Iowa concluded that "methamphetamine Guidelines are entitled to less deference than those Guidelines that were based on the Commission's exercise of intuitional expertise and empirical analysis." 948 F. Supp. 2d 1009, 1027 (N.D. Iowa 2013); *Johnson*, 379 F.Supp.3d at 1218 (citing *Hayes* with approval for this proposition). In a later opinion, Judge Bennet further explained his analysis that the methamphetamine Guidelines were flawed, noting that "the methamphetamine Guidelines currently maintain a 10-to-1 ratio between methamphetamine mixture and actual (pure) methamphetamine." *United States v. Nawanna*, 321 F. Supp. 3d 943, 950 (N.D. Iowa 2018). Judge Bennet found the 10-to-1 ratio "unsupported and not based on empirical evidence." *Id.* at 951.

The 10-to-1 ratio is instead derived from the mandatory minimum penalties contained in 21 U.S.C. § 841(b)(1)(A) and 841(b)(1)(B). *Moreno*, 2019 WL 3557889, at *2. Congress first set mandatory minimum sentences for methamphetamine in 1988. *Id.* (citing Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 6470(g)-(h), 102 Stat. 4181, 4378 (codified at 21 U.S.C. § 841(b)(1)). The following year the Commission revised the Drug Quantity Table in § 2D1.1 by incorporating the statutory penalties and differentiating between actual/pure methamphetamine and methamphetamine mixtures at a 10-to-1 ratio." *Id.* (quoting *United States v. Ferguson*, No. CR 17-204 (JRT/BRT), 2018 WL 3682509, at *2 (D. Minn. Aug. 2, 2018)). In 1998, Congress lowered by half the amounts of actual and mixture methamphetamine required to meet the mandatory minimum sentences, and again the Commission followed suit in increasing the base offense levels for methamphetamine offenses. *Id.* "To summarize, the commission twice amended the Guidelines for methamphetamine offenses so that the base offense levels (for a defendant with a criminal history category of I) would exactly align with the mandatory-minimum sentences – and the Commission did so each time right after Congress created or changed the minimum sentences." *Id.*

It is well-established that a district court may vary from the advisory guidelines, and that such variances are due the greatest deference when "the sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply.'" *See Kimbrough*, 522 U.S. at 108-09 (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). Several district courts have noted, however, that the Guidelines for "actual" methamphetamine or "ice" are excessive and "not representative of a 'heartland' or 'a set of typical cases embodying the conduct that each guideline describes.'" *United States v. Pereda*, No. 18-cr-00228-CMA, 2019 WL 463027, at *4 (D. Colo. Feb. 6, 2019) (quoting *Harry*, 313 F.Supp.3d at 972; *see also Ferguson*,

2018 WL 3682509, at *3 (agreeing that Guideline ranges for actual and ice methamphetamine are excessive and not "heartlands")).

In the case *sub judice*, the Defendant's plea agreement stipulated that the Defendant conspired to distribute and is accountable for at least 500 grams but less than 1.5 kilograms of actual methamphetamine. This corresponds to a base offense level of 34; however, the same amount of mixture methamphetamine would only have a base offense level of 30. For Mr. Bassett, who is a Category IV offender, this results in a 53-month difference in the low level of the sentencing range between the two. Such a vast difference between the two is not justified by any empirical evidence. Further, although each criminal sentence is an individualized determination, a district court's policy disagreement with the guidelines may justify categorical variances, not just variance based on individualized determinations. *Pereda*, 2019 WL 463027, at *2 (citing *Spears v. United States*, 555 U.S. 261, 267 (2009)). Thus, regardless of individual characteristics of the Defendant, the wide variance in his sentencing range based on purity alone is not sound policy, and this Court should vary from his guidelines.

  B. *Methamphetamine Purity is No Longer an Accurate Indicator of a Defendant's Role in a Drug Trafficking Conspiracy*

According to the United States Department of Justice, the average purity of all methamphetamine in the United States is over 90 percent, and it has been since 2011. *Ferguson*, 2018 WL 3682509, at *4 (citing U.S. Dep't of Justice, Drug Enforcement Admin., *2017 National Drug Threat Assessment* 67-70 (2017), https://www.dea.gov/docs/DIR-040-17_2017-NDTA.pdf)). Despite this, the guidelines state: "Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." *See United States v. Carrillo*, No. 2:17-cr-

00082, 2020 WL 885582, at * (E.D. Cal. Feb. 24, 2020) (quoting USSG § 2D1.1, cmt. n.27(C)). However, this logic simply does not apply to methamphetamine. *Id.* (noting a number of courts acknowledging the increase in purity of methamphetamine being marked in this court and rejecting actual methamphetamine guidelines based on purity) (citing *Harry*, 313 F.Supp.3d at 974; *United States v. Saldana*, No. 1:17-CR-271-1, 2018 U.S. Dist. LEXIS 110790, at *7-8 (W.D. Mich. July 3, 2018); *Ferguson*, 2018 WL 3682509, at *1)). As noted by Judge Bennett, "I find, that, because today's methamphetamine is substantially pure, purity is not a proxy for relative culpability. . . . [T]here was once some truth to the Commission's assumption that large quantities are associated with high purities, because methamphetamine was cut as it worked its way down to the street-level dealer or user, but that is no longer the case." *Nawanna*, 321 F.Supp.3d at 951; *see also United States v. Hartle*, No. 4:16-cv-00233-BLW, 2017 WL 2608221, at *1 (D. Idaho June 15, 2017) ("Due to increases in the average purity of methamphetamine sold today, purity is no longer an accurate indicator of a defendant's culpability or role in a drug enterprise.").

Because essentially all methamphetamine cases in federal courts now are subjected to a guideline range that has been enhanced based upon purity under now-defunct reasoning, the guidelines' purity enhancement is excessive. *Id.* at 954 (citing *Hayes*, 948 F.Supp.2d at 1027-29). Thus, this Court should vary from the guidelines in this case based upon the reasoning of the district courts noted above.

### C. The Methamphetamine Guidelines Create Unwarranted Sentencing Disparities between Methamphetamine Offenses and Offense Involving Other Major Drugs

"[C]ourts have questioned the severity of the methamphetamine Guidelines in comparison to other dangerous drugs, including heroin." *Moreno*, 2019 WL 3557889, at *4. Judge Urbanski from the Western District of Virginia explained:

> In *Harry*, the court posed a hypothetical comparing the Guidelines range for a defendant facing a charge of conspiracy to distribute 500 grams of heroin versus 500 grams of 95% pure methamphetamine. All else being equal, the court calculated that the Guidelines range for methamphetamine offense is "more than twice the range of the heroin conspirator. Why? Is ice methamphetamine more than twice as potent, dangerous, destructive or addictive than heroin? I am aware of no objective evidence – from the United States Sentencing Commission or otherwise – supporting such a proposition."

*Id.* (quoting *Harry*, 313 F.Supp.3d at 973). Giving harsher treatment to methamphetamine defendants "based on one factor—purity—obscures other factors and creates 'false uniformity.'" *United States v. Bean*, 371 F.Supp.3d 46, 53 (D.N.H. 2019). That "false uniformity" is clear when methamphetamine sentences are compared with others. For example, in the present case, Mr. Bassett is subject to a base offense level of 34 for 500 grams to 1.5 kilograms of actual methamphetamine, however, "the same quantities of other drugs result in lower base offense levels: fentanyl (30), cocaine base (crack) (30), heroin (26), and cocaine (24)." *See id.*

Mr. Bassett is subject to a range of 151 to 188 months of incarceration based upon the methamphetamine guideline; however, were he to have possessed fentanyl or crack cocaine instead, his sentencing range would be almost four years lower. Were he to be in possession of heroin, he would be looking at a sentence almost eight years lower than what he faces under the guidelines. Such disparities are not in line with the goals of 18 U.S.C. § 3553.

### IV. Defendant's Position on Sentencing

The Defendant asks this Court to adopt the reasoning of other district courts and adopt the methamphetamine mixture guideline in his case. *See Bean*, 371 F.Supp.3d at 56-57 (noting that the practical effect of the policy disagreement is adjusting the base level to the methamphetamine mixture guideline); *Johnson*, 379 F.Supp.3d at 1229 ("Eradicating the distinction between actual methamphetamine and methamphetamine mixture appropriately corrects for the Guidelines' unfounded penalization of purity."); *Harry*, 313 F.Supp.3d at 974 (considering the mixture

guidelines instead of the actual/ice guideline); *Nawanna*, 322 F.Supp.3d at 956 (using an alternative guidelines calculation utilizing methamphetamine mixture as the base offense level).

Thus, as was calculated in the above-stated cases, this Court should use 30 as the base offense level as opposed to 34. As a result, the Defendant's new total offense level, after accounting a 3-point reduction for acceptance of responsibility, would be calculated at 27. The resulting guideline range would be 100 to 125 months' incarceration for the methamphetamine offense. This guideline range encompasses the 120-month mandatory minimum.

Alternatively, without adjusting the base offense level as described above, a 120-month sentence is essentially a two-point variance. Such a variance is warranted due to the factors set forth above, and the sentence still constitutes as serious sentence that meets the requirements of 18 U.S.C. § 3553 as set forth below.

In *United States v Booker*, 543 U.S. 220 (2005), the United States Supreme Court held that every defendant in the federal criminal justice system is entitled to receive a sentence in conformity with the general sentencing principles set forth in 18 U.S.C. § 3553(a). This statute provides the directive that each sentence imposed shall be "sufficient, but not greater than necessary" to achieve the purposes set forth in subsection two (2) of the same. These purposes include the following:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

The statute sets forth permissible factors which the Court must weigh in an effort to attain the goals enumerated in subsection two. These considerations include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant, *see* 18 U.S.C. § 3553(a)(1);
> (2) the kinds of sentences available, *see* 18 U.S.C. § 3553(a)(3);
> (3) the kinds of sentence and the sentencing range established for the Sentencing Guidelines, *see* 18 U.S.C. § 3553(a)(4); and
> (4) the Sentencing Guidelines Policy Statements, *see* 18 U.S.C. § 3553(a)(5)
> (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, *see* 18 U.S.C. § 3553(a)(6); and
> (6) the need to provide restitution to any victims of the offense, *see* 18 U.S.C. § 3553(a)(7).

In *Gall*, the United States Supreme Court stressed the importance of that Court's remedial opinion in *Booker*. *Gall* makes clear, in the post-*Booker* world, sentencing discretion is vested in the District Court, rather than in the Sentencing Commission. Our Supreme Court has cautioned that the sentencing guidelines are not to be presumed reasonable. *See United States v. Nelson*, 555 U.S. 350, 352 (2009) (discussion of Supreme Court case law emphasizing that district courts may not presume that the sentencing guidelines range is reasonable).

The Defendant respectfully requests that the appropriate sentence in this case is 120 months. This provides a sentence that is sufficient but not greater than necessary to satisfy the requirements of § 3553. The Defendant suffered from early exposure to drugs has led him into the all-too-familiar lifestyle that this Court sees on a regular basis, and this should be considered in mitigation of the Defendant's sentence. *See United States v. Mapp*, No. 05-80494, 2007 WL 485513, at *5 (E.D. Mich. 2007) (factoring in troubled home life as a youth including drug use by unmarried parents and abuse in determining sentencing variance). Because the Defendant is still relatively young, a mandatory minimum sentence will provide a light at the end of the tunnel for the Defendant to work on achieving his goals of drug recovery and job training in the BOP. *See*

*United States v. Moreland*, 568 F.Supp.2d 674, 687 (S.D.W.V. 2008) ("[T]he goal of rehabilitation 'cannot be served if a defendant can look forward to nothing beyond imprisonment . . . . A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life.") (quoting *United States v. Carvajal*, 2005 WL 476125, at *6 (S.D.N.Y. 2005)).

A sentence in accordance with the methamphetamine mixture guidelines, although less harsh than the actual/ice guidelines, will nevertheless certainly have a deterrent effect on him. Further, the full resources of the Bureau of Prisons will aid him as he prepares to return to his family and get away from the negative influences that have dragged him down over the years.

## V. Conclusion

The Defendant acknowledges his crime and has agreed to serve a lengthy sentence; however, due to his youth, personal characteristics, and disagreements with the sentencing policy on actual methamphetamine, this Court should sentence his to the mandatory minimum of 120 months. The Defendant requests that this Court vary from the guideline range in light of the circumstances of the offense and his recovery and rehabilitation.

Respectfully submitted, this the 29th of April, 2022.

/s Bryce W. McKenzie
BRYCE W. MCKENZIE, BRP#27415
*Attorney for Defendant*
DELIUS & MCKENZIE, PLLC
124 Court Avenue
Sevierville, TN 37862
(865) 428-8780

# CERTIFICATE OF SERVICE

I hereby certify on the 29th day of April, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Resurrection Parties may access this filing through the Court's electronic document and filing system.

/s Bryce W. McKenzie
BRYCE W. MCKENZIE, BRP#27415